UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

Ana R. T.,[1]

Plaintiff,

v.

MARTIN O'MALLEY,

Defendant.

Case No.  23-cv-01260-RMI

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 18

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 8, 9) and both parties have moved for summary judgment (dkts. 15, 18). For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied.

**LEGAL STANDARDS**

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact,

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #17. *See* (Dkts. 17-1 through 17-9).

if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**BACKGROUND**

In December 2014, while Plaintiff was working as a cashier at Savemart Supermarkets, she tripped over a customer's dog and twisted her back. AR at 481, 702. Plaintiff immediately noted pain her low back and reported the injury to her employer. *Id.* at 702. She was later sent to the emergency room for an assessment of her back pain. *Id.* at 479-99. For a time, at the advisement of her physicians, Plaintiff was placed on "light duty" with the following restrictions: Plaintiff was not to lift, carry, push, or pull more than 10 pounds, and was not to engage in "repetitive bending." *Id.* at 702.

Plaintiff's back pain persisted. She was prescribed oral and topical medication to manage her pain, she underwent physical therapy, including aquatic therapy, received chiropractic care, acupuncture, and injection treatments in the hopes of alleviating her pain. *Id.* at 24, 49, 527-28, 754-758, 858. Eventually, Plaintiff ceased working altogether and applied for Social Security Disability benefits, alleging an onset date of April 8, 2016. *Id.* at 320.

Over the eight or so years of treatment memorialized in the Administrative Record,

United States District Court
Northern District of California

2

Plaintiff has consistently sought care for chronic pain in her low back. *See generally id.* at 479-1542 (Plaintiff's medical records spanning onset of back pain in December 2014 to most-recent records in November 2021). Sometimes, this pain radiates to her neck, her buttocks, and down her legs. *See id.* at 851-53, 878-89, 1409-10. Occasionally, Plaintiff experiences flare ups, which require her to seek immediate medical attention. *Id.* at 822, 1354-55.  In 2017, Plaintiff began experiencing pain in her neck and shoulders, and more recently, Plaintiff has reported numbness, tingling, stiffness, and cramping in her hands. *See id.* at 793, 861, 863, 1354-55.

Living with chronic back pain has affected other areas of Plaintiff's life. She has been diagnosed with depression and anxiety and has received corresponding mental health treatment. *See id.* at 840-43. She has gained weight and as of 2021 has a body mass index of 30.1. *Id.* at 1354-55. Throughout the record, the limits on her daily activities are documented: Plaintiff requires assistance from her daughters to do many household chores, and has difficulty getting dressed, putting on her shoes, and shopping. *See e.g.*, *id.* at 524-25, 527-28, 583, 823, 841, 844, 1398.  At the hearing before the ALJ, Plaintiff testified that she could not lift 10 pounds without exacerbating her back pain, had difficulty standing for longer than 20 minutes, and that her pain symptoms caused her to cry regularly. *Id.* at 22. In a 2019 function report, Plaintiff noted that she could bathe, go to the bathroom, nap, watch television, read the Bible, and pray. *Id.* at 377. With respect to dressing herself, Plaintiff stated that "depend[ing] on what day I am having, I need assistance to put on and take off shoes" and that she "do[esn't] do much with my hair as it will hurt." *Id.* Plaintiff stated that although she can cook some meals for herself, it generally takes her two hours because she must take breaks due to pain. *Id.* Plaintiff attends church and can walk about two blocks before needing to rest. *Id.* at 380-81.

**THE ALJ'S DECISION**

The ALJ engaged in the required five step sequential evaluation process. *See id.* at 18-31. At step one, the ALJ determined Plaintiff had not performed substantial gainful activity during the relevant period. *Id.* at 18. At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease; bilateral upper extremity dysfunction; obesity; unspecified depressive disorder; and generalized anxiety disorder. *Id.* The ALJ found Plaintiff's

gastrointestinal abnormalities, headaches, and allergic rhinitis to be non-severe. *Id.* At step three, the ALJ found that none of Plaintiff's conditions met or equaled any listed impairment. *Id.* In formulating Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567, with several exertional limitations. *Id.* at 20. In reaching this determination, the ALJ dismissed Plaintiff's testimony about the intensity, persistence, and limiting effects of her back and neck pain because it was inconsistent with the record medical evidence. *Id.* at 25. At step four, the ALJ found that Plaintiff could not complete her past relevant work as a cashier/checker and information clerk. *Id.* at 28. At step five, the ALJ found that Plaintiff could perform the representative occupations of marking clerk, officer helper, router, document preparer, paramutual, and election clerk. *Id.* at 30. The ALJ then concluded that Plaintiff was not disabled. *Id.* at 31.

## DISCCUSION

The court finds that the ALJ erred at step three, in formulating Plaintiff's RFC, by dismissing Plaintiff's pain testimony without offering "specific, clear, and convincing reasons" for doing so. This error is not harmless, as Plaintiff's testimony regarding the limiting effects of her pain, if included in her RFC, would likely alter the ALJ's determinations at step five and could affect the ultimate finding of non-disability.

When assessing a claimant's testimony regarding the subjective intensity, persistence, and limiting effects of their symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged." *Id.* (internal quotations omitted). If the first test is met, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) and *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)) (internal quotations omitted). This is not an easy standard to meet; "[t]he clear and convincing standard is the most demanding required in Social Security Cases." *Id.* (citing *Moore*

4

*v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cr. 1998). However, the evidence relied upon by the ALJ must in fact contradict Plaintiff's testimony; isolated normal findings will not suffice.  *See Garrison*, 759 F.3d at 1017, n. 23 (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) for the proposition that an ALJ "[is] not permitted to 'cherry-pick' from [] mixed results to support a denial of benefits"); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[A physician's] statements must be read in the context of the overall diagnostic picture [he or she] draws").

In dismissing Plaintiff's testimony about the persistence, intensity, and limiting effect of her back pain, the ALJ relies heavily upon "physical examination findings show[ing] intact cranial nerves, normal deep tendon reflexes, intact sensation, normal muscle bulk and tone, full range of motion of the bilateral lower extremities, full strength, a normal gait and station, and no swelling, ecchymosis, or spasm." AR at 23 (citing AR 557, 595, 706-07, 806-07, 822, 831, 880, 882, 896, 950, 1355, 1474). Indeed, the ALJ uses this set of records throughout his opinion to counter more severe findings. *Id.* at 19, 20, 25, 27, 28. Upon closer inspection, however, these records do not support the ALJ's dismissal of Plaintiff's pain and symptom testimony.

First, the ALJ improperly relies on isolated normal findings that do not reflect Plaintiff's typical status. For example, although the ALJ rightly notes that, on occasion, Plaintiff has exhibited a "normal gait and station" (*see* AR at 706, 890, 1355, 1410, 1474) at the vast majority of her appointments, Plaintiff presented with an antalgic or abnormal gait (*see e.g.*, AR at 546, 557, 585, 595, 657, 717, 793, 799, 804, 806, 810, 811, 814, 817, 819, 822, 823, 824, 827, 831, 833, 835, 841, 859, 880, 885, 1183, 1415, 1421, 1444, 1531). Similarly, Plaintiff has occasionally been capable of a full range of motion. *See* 804, 949, 1355. However, her range of motion is almost always restricted, sometimes severely so, and is frequently performed with pain. *See e.g.*, 524-25, 555, 557, 587, 594-95, 655-56, 706, 717, 836, 851-53, 859, 880, 882, 890, 896, 903-04, 1399, 1421, 1427, 1444, 1531, 1542. Further, two of the four records cited by the ALJ that

5

mention Plaintiff's "full range of motion" refer to Plaintiff's knees, not her back or neck, the sources of Plaintiff's alleged pain. *Id.* at 822, 806-08. Likewise, several of the records cited by the ALJ as proof of Plaintiff's "normal reflexes" state quite the opposite—that Plaintiff's deep tendon reflexes were entirely absent. *Id.* at 557, 594-95, 882. Thus, it appears the ALJ improperly cherry-picked isolated normal findings from Plaintiff's overall record. *See Garrison*, 759 F.3d at 1017, n. 23.

Further, the ALJ's cited normal findings were almost always accompanied by abnormal findings consistent with Plaintiff's allegations of pain. *See e.g.*, AR at 557-58 (noting intact cranial nerves, symmetric muscles, and intact sensation, but limited lumbar and thoracic range of motion, where "all lumbar ranges of motion caused pain," "essentially absent" deep tendon reflexes in all extremities, "heel and toe walk was performed with great difficulty," and "palpation of the cervical, thoracic, and lumbosacral regions produced pain and tenderness."); *id.* at 594-95 (noting intact cranial nerves, normal muscle testing, and negative Bragard's test, but limited range of motion where "all lumbar ranges of motion caused pain," positive Lasegue's, Fabere's, Ely's Kemp's, Valsalva, and Soto-Hall tests, an absence of deep tendon reflexes, heel and toe walk "performed with great difficulty causing increased lumbosacral and thoracic pain," pain upon palpation and of the "entire lumbosacral and gluteal regions bilaterally", and that Plaintiff "was witnessed crying with pain upon performance of range of motion and some of the orthopedic tests."); *id.* at 831 (noting "sensory exam, grossly intact," negative straight leg test, and 4/5 motor strength, but Plaintiff was "crying during the visit due to pain;" her reflexes were diminished, and she had an antalgic gait pattern); *id.* at 1444 (Plaintiff had "intact cranial nerves," "normal reflexes" and normal sensory and motor exam, but was "significantly tender to palpation," her range of motion "significantly decreased due to pain and spasm," straight leg raise test was positive at 30 degrees, and she was limping). Thus, when placed in the context of Plaintiff's "overall diagnostic picture," the ALJ's cited normal findings do not contradict Plaintiff's statements about her pain. *See Holohan*, 246 F.3d at 1205.

Finally, it is not clear that the ALJ's cited normal findings are relevant to, let alone inconsistent with, Plaintiff's statements about her pain. For example, that Plaintiff's cranial nerves

United States District Court
Northern District of California

were intact should come as no surprise; Plaintiff did not allege that her condition was interfering with her vision, sensation or motor function in her face, or her hearing, balance, sense of taste or smell, digestion, or heart rate.[3] The record does not reflect any indication that Plaintiff's "intact cranial nerves" somehow undermine Plaintiff's allegations of pain—no physician opines as much, and the ALJ does not explain the connection between the two. So too with similar findings such as Plaintiff's intact sensation, reflexes, normal muscle bulk and tone, and strength. *See Medina v. Berryhill*, No. CV 16-3800-PLA, 2017 WL 401936, *4-5 (C.D. Cal. Jan. 30, 2017) (holding that objective findings of intact cranial nerves, sensation, reflexes, and coordination, were not inconsistent with plaintiff's testimony about her back pain); *see also Gregory C. v. Comm'r*, No. 3:18-cv-00971-HZ, 2019 WL 6045583, *13 (D. Or. Nov. 15, 2019) ("While Plaintiff experiences pain and fatigue, it is not obvious that his impairment would cause him to have muscle atrophy, an unnatural gait, a loss of sensation, or a loss of strength."); *Debra D.B. v. Comm'r Soc. Sec.*, No. 6:18-cv-01811-HZ, 2020 WL 118255 *7 (D. Or. Jan. 9, 2020) ("While it is possible the ALJ believed that normal motor strength and muscle tone contradicted Plaintiff's complaints of fatigue, the ALJ did not explain this connection…. [and the] Court will not speculate on the ALJ's unstated reasoning or engage in post-hoc rationalization.").

Given the discrepancies outlined above, the ALJ's dismissal of Plaintiff's pain testimony cannot be said to be based upon substantial evidence. The records cited by the ALJ do not contradict Plaintiff's statements about the severity, persistence, or limiting effects of her pain. Because crediting Plaintiff's testimony would necessarily alter her RFC, the error is not harmless. Accordingly, the court **REMANDS** for further proceedings. On remand, the ALJ is **ORDERED** to reassess Plaintiff's pain and symptom testimony and, if necessary, to provide "specific, clear and convincing reasons" for dismissing Plaintiff's allegations.

Having found reversible error in the ALJ's assessment of Plaintiff's pain and symptom testimony, the court need not address Plaintiff's other claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).  However, as mentioned above, the ALJ used this same set of records

---

[3] *Cranial Nerves*, Cleveland Clinic, https://my.clevelandclinic.org/health/body/21998-cranial-nerves, (last visited July 2, 2024).

throughout his decision to counter more severe findings and limit the extent of Plaintiff's restrictions. These include the ALJ's analysis at step three of Listings 1.15, 1.16, and 1.18 as well as of the medical opinion evidence of Drs. Glantz, Van Kirk, and Martinovsky. AR at 19-28. Given the errors outlined above, the ALJ is **ORDERED** to reconsider those portions of his analysis that rely heavily on the evidence at issue today. The ALJ is further **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing opinion as necessary. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 WL 1056787, at *5 (N.D. Cal Mar. 19, 2021).

**CONCLUSION**

For the reasons stated above, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion is **DENIED**. This case is remanded for further proceedings consistent with this order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated:    July 30, 2024

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California